**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X     Case No.
ETHAN RYAN FORD and EMILIO GOMEZ,
*on behalf themselves, FLSA Collective Plaintiffs*
*and the Class,*

                                    Plaintiffs,          **CLASS AND COLLECTIVE ACTION**
                                                         **COMPLAINT**

         -against-

AUDREY SIGNS INC., BOB BLACK,                            **Jury Trial Demanded**
and HARRIET BLACK

                                    Defendants.
--------------------------------------------------------X

        Plaintiff Ethan Ryan Ford ("Ford" or "Plaintiff Ford") and Plaintiff Emilio Gomez

("Gomez" or "Plaintiff Gomez") (collectively "Plaintiffs") alleges on behalf of himself and

others similarly situated against Defendants Audrey Signs Inc. ("Audrey Signs"), Bob Black

("Bob" or "Defendant Bob Black"), and Harriet Black ("Harriet" or "Defendant Harriet Black")

(collectively "Defendants"), upon information and belief, as follows:

### NATURE OF THE CLAIMS

1.  Plaintiff Ford was employed by the Defendants as a New York City Housing Authority

    Field Installer. Plaintiff Ford was hired on December 26, 2018 and was initially paid

    $28.89. On January 14, 2019, Plaintiff Ford's hourly rate increased to $38.89. Despite

    working more than forty hours per week Defendants failed to pay Plaintiff Ford overtime.

    Defendants also failed to pay Plaintiffs the prevailing wage rate. Furthermore, the

    Defendants committed statutory wage violations, by failing to provide Plaintiffs with a

    wage notice or a proper wage statement.

2.  Plaintiff Gomez was employed by Defendants as a New York City Housing Authority

    Field Installer. Plaintiff Gomez was hired around February 2019 and was paid $38.89 per

hour. The Defendants failed to pay Plaintiff Gomez overtime.  The Defendants also failed to Plaintiff Gomez at the prevailing wage rate. Furthermore, the Defendants committed statutory wage violations, by failing to provide Plaintiff Gomez with a wage notice or a proper wage statement.

3. Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended 29 U.S.C. §§ 201 *et. seq.* ("FLSA") that they are entitled to recover from Defendants: (1) unpaid overtime, (2) unpaid prevailing wages, (3) liquidated damages and (4) attorneys' fees and costs.

4. Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL") that they are entitled to recover from Defendants: (1) unpaid overtime, (2) unpaid prevailing wages, (3) statutory penalties, (4) liquidated damages and (5) attorneys' fees and costs.

5. Lastly, the Plaintiffs allege a claim under 26 U.S.C. § 7434 for the fraudulent filing of information returns.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located in this district.

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

9. Plaintiff Ford was and is a resident of Kings County, New York.

10. Plaintiff Gomez was and is a resident of Kings County, New York.

11. Defendant Audrey Signs Inc. was and is a domestic business corporation organized under the laws of the State of New York.

12. Defendant Audrey Signs Inc. was and is authorized to conduct business in the State of New York.

13. Defendant Audrey Signs Inc. was and is located at 600 West 57th Street, on the third floor, New York, New York 10019.

14. Defendant Bob Black (hereinafter as "Bob" or "Defendant Bob Black") was and is a resident of New York County, New York.

15. Defendant Bob Black was and is an owner of Audrey Signs Inc.

16. Defendant Bob Black exercised control over the employment terms and conditions of Plaintiff Ford, Plaintiff Gomez, and other similarly situated Plaintiffs.

17. Defendant Bob Black had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff Ford, Plaintiff Gomez and the other similarly situated Plaintiffs.

18. Defendant Harriet Black ("hereinafter as "Harriet" or "Defendant Harriet Black") was and is a resident of New York County, New York.

19. Defendant Harriet Black was and is an owner of Audrey Signs Inc.

20. Defendant Harriet Black exercised control over the employment terms and conditions of Plaintiff Ford, Plaintiff Gomez and other similarly situated Plaintiffs.

21. Defendant Harriet Black had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff Ford, Plaintiff Gomez and the

other similarly situated Plaintiffs.

22. At all times, Plaintiff Ford, Plaintiff Gomez, and the other similarly situated Plaintiffs could complain directly to Defendant Bob Black regarding any of the terms of their employment, and Defendant Bob Black would have the authority to effect any changes to the quality and terms of the Plaintiffs' employment.

23. At all times, Plaintiff Ford, Plaintiff Gomez, and other similarly situated Plaintiffs could complain directly to Defendant Harriet Black regarding any of the terms of their employment, and Defendant Harriet Black would have the authority to effect any changes to the quality and terms of the Plaintiffs' employment.

24. At all times relevant times, Audrey Signs Inc. is a businesses or enterprises engaged in interstate commerce employing more than fifteen employees and earning gross annual sales over $500,000.00.

25. At all relevant times, Audrey Signs Inc. is and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL and the regulations thereunder.

26. At all relevant times, the work performed by the Plaintiffs was directly essential to the business operated by the Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees employed by Defendants on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

28. At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions,

and are and have been subjected to Defendants' decisions, policies, plans, programs, practices and procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of forty (40) hours per workweek.  The claims of Plaintiffs stated herein are essentially the same as those of FLSA Collective Plaintiffs.

29. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b).  The FLSA Collective Plaintiffs are readily ascertainable.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail for the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

30. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class period").

31. All said persons, including Plaintiffs, are referred to herein as the "Class."  The Class members are readily ascertainable.  The number and identity of the Class members are determinable from the records of Defendants.  The hours assigned and worked, the position held, and rate of pay for each Class member are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under F.R.C.P. Rule 23.

32. <u>The proposed Class is so numerous that a joinder of all members is impracticable</u>, and the disposition of their claims as a class will benefit the parties and the Court.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants; upon information and belief, there are in excess of twenty (20) Class Members.

33. <u>Plaintiffs' claims are typical of those claims,</u> which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate action.  All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay overtime compensation, (ii) failing to pay prevailing wages; (iii) failing to provide proper wage statements per requirements of the New York Labor Law, and (iv) failing to provide proper wage and hour notices, at date of hiring and annually, per requirements of the New York Labor Law.  Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

34. <u>Plaintiffs are able to fairly and adequately protect the interests of the Class</u> and have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

35. <u>A class action is superior to other available methods for the fair and efficient adjudication of the controversy</u> – particularly in the context of the wage and hour litigation where

individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.   Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress to wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of the individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions which they were not parties.  The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

36. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class

actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

37. <u>There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members</u>, including:

(a) Whether Defendants employed Plaintiffs and Class members within the meaning of the New York law;

(b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

(c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and Class members for their work;

(d) Whether Defendants properly notified Plaintiffs and Class members of their hourly rate and overtime rate;

(e) Whether Defendants paid Plaintiffs and Class members the proper overtime compensation under the New York Labor Law;

(f) Whether Defendants paid Plaintiffs and Class Members prevailing wage compensation under the New York Labor Law;

(g) Whether Defendants provided a proper wage notice to Plaintiffs and Class Members per requirements of the New York Labor Law;

(h) Whether Defendants provided proper wage statements to Plaintiffs and Class members per requirements of the New York Labor Law; and

(i) Whether Defendants provided proper wage and hour notices to Plaintiffs and Class

members, at date of hiring and annually, as required by the New York Labor Law.

## STATEMENT OF FACTS

38. On December 26, 2018, Plaintiff Ford commenced his employment with the Defendant.

39. Plaintiff Ford was employed as a New York City Housing Authority Field Installer.

40. Plaintiff Ford's duties and responsibilities included but were not limited to: surveying and installing signage in the residential and commercial buildings for the duration of the NYCHA project, delivering signage to and from different active site, as well as transporting equipment.

41. Plaintiff Ford was a stellar employee and satisfactory performed his duties and responsibilities, receiving numerous praises for his outstanding work performance.

42. Plaintiff Ford was never reprimanded for his work performance.

43. Plaintiff Ford was employed as a non-exempt employee.

44. Plaintiff Ford was contracted to work from 8:30 a.m. to 5:30 p.m. from Monday through Friday.

45. At least twice a week, Plaintiff Ford would work until 7:00 p.m.

46. At least twice a week, Plaintiff Ford would work 11 hours in one shift.

47. Overall, Plaintiff Ford would work approximately 50.5 hours per week.

48. Initially, Plaintiff Ford's hourly rate was $28.89.

49. After January 14, 2019, according to Plaintiff Ford's contract, Ford's hourly rate of would increase to $38.89.

50. Each week, Plaintiff Ford was paid a flat rate of $1555.60 regardless of the amount of hours he worked.

51. On or about February 2019, Plaintiff Gomez commenced his employment with the Defendant.

52. Plaintiff Gomez was employed as a New York City Housing Authority Field Installer.

53. Plaintiff Gomez's duties and responsibilities included but were not limited to: surveying and installing signage in the residential and commercial buildings for the duration of the NYCHA project, delivering signage to and from different active site, as well as transporting equipment.

54. Plaintiff Gomez was a stellar employee and satisfactory performed his duties and responsibilities, receiving numerous praises for his outstanding work performance.

55. Plaintiff Gomez was never reprimanded for his work performance.

56. Plaintiff Gomez was employed as a non-exempt employee.

57. Plaintiff Gomez was contracted to work from 8:00 a.m. to 4:00 p.m. from Monday through Friday.

58. Plaintiff Gomez actually worked from 8:00 a.m. to 5:30 p.m. from Monday through Friday.

59. At least twice a week, Plaintiff Gomez would work until 7:00 p.m.

60. At least twice a week, Plaintiff Gomez would work 11 hours in one shift.

61. Overall, Plaintiff Gomez would work approximately 50.5 hours per week.

62. Plaintiff Gomez's hourly rate was $38.89.

63. Each week, Plaintiff Gomez was paid a flat rate of $1555.60 regardless of the amount of hours he worked.

64. Plaintiff Gomez and Plaintiff Ford worked together on the New York City Housing Authority projects on a daily basis.

65. Plaintiff Gomez and Plaintiff Ford reported to Defendant Bob Black, co-owner of Defendant Audrey Signs Inc.

66. Plaintiff Ford reported to Defendant Bob Black, co-owner of Defendant Audrey Signs Inc.

67. Plaintiff Gomez and Plaintiff Ford reported to Defendant Harriet Black, co-owner of Defendant Audrey Signs Inc.

68. Plaintiff Ford reported to Defendant Harriet Black, co-owner of Defendant Audrey Signs Inc.

69. Plaintiff Ford reported to John Broderick, the office manager.

70. Plaintiff Gomez reported to John Broderick, the office manager.

71. Plaintiff Gomez reported to Ann Marie Malcolm, the office manager.

72.  Plaintiff Ford reported to Ann Marie Malcolm, the office manager.

73. Plaintiff Gomez often worked through their entitled hour-an-hour break

74. Plaintiff Ford often worked through their entitled hour-an-hour break.

75. That at all times hereinafter, Plaintiff Ford and Plaintiff Gomez would rent cars to travel from site to site in order to transport heavy tools and equipment.

76. Defendant Audrey Signs would reimburse the Plaintiffs if they did rent vehicles to transport the heavy tools and equipment.

77. Plaintiff Ford purchased his own vehicle at his own expense to complete fulfill the duty of transporting heavy tools and equipment.

78. Plaintiff Ford and Plaintiff Gomez would frequently transport heavy tools and equipment to work site locations that were distant.

79. On or around September 2020, Plaintiff Ford worked three additional Saturdays with Defendant Bob Black at a Weill Cornell medical facility to install signs. During those days, Mr. Ford worked 12 hours in one day, from 9 a.m. to approximately 9 p.m. Defendant Audrey Signs did not pay Plaintiff Ford the proper wages for this project, including overtime.

80. On or around January of 2020, Plaintiff Ford and Plaintiff Gomez complained to John Broderick with regards to their unpaid wages.

81. On or around January of 2020, Plaintiff Ford and Plaintiff Gomez complained to Ann Marie Malcolm with regards to their unpaid wages.

82. John Broderick dismissed Plaintiffs' complaints and told the Plaintiffs that the Defendants never pay overtime.

83. Ann Marie Malcolm dismissed Plaintiffs' complaints and told the Plaintiffs that the Defendants never pay overtime.

84. Not only did John Broderick dismiss Plaintiffs' complaints, he told Plaintiffs to not to complaint again and to **"get over it."**

85. Plaintiffs' complained about their unpaid wages on a regular basis to Defendants but were consistently ignored.

86. Although Plaintiffs worked over forty hours per week, the Defendants failed to pay them at the required overtime rate.

87. Plaintiffs were not provided with a wage notice upon hire or provided with wage notices annually.

88. The Defendants failed to provide Plaintiffs with a proper wage statement with each payment received.

89. Defendants knowingly and willfully operated their businesses with a policy of not paying the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) to Plaintiff Ford.

90. Defendants knowingly and willfully operated their businesses with a policy of not paying the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) to Plaintiff Gomez.

91. Defendants knowingly and willfully operated their businesses with a policy of not providing proper wage notices pursuant to the NYLL.

92. Defendants knowingly and willfully operated their businesses with a policy of not provided proper wage statements pursuant to the NYLL.

93. During this time period, Plaintiff Ford qualified for payment pursuant to the Prevailing Wage Schedule as mandated by the NYLL.

94. During this time period, Plaintiff Gomez qualified for payment pursuant to the Prevailing Wage Schedule as mandated by the NYLL.

95. Defendants neglected to change Plaintiff Ford's hourly rate after he completed his training.

96. Defendants only changed Plaintiff Ford's hourly rate after he complained about the discrepancy to Defendant Bob Black and Defendant Harriet Black.

97. Plaintiff Ford was not paid the corresponding prevailing wage while working on the New York City Housing Authority project.

98. Plaintiff Gomez was not paid the corresponding prevailing wage while working on the New York City Housing Authority project.

99. In or around July 1, 2019, Plaintiffs received an email from Wilma Rivera ("Lena"), a representative from NYCHA, detailing that the prevailing wage was increased to $40.24 effective as of July 1, 2019.

100.    As of July 1,2019, Plaintiff's hourly pay rate was suppose to increase to $40.24.

101.    Nevertheless, Plaintiff Ford and Plaintiff Gomez continued to be paid their original hourly rate of $38.89.

102.    A few days after receiving the email from Lena, Plaintiff Ford had a meeting with Defendant Bob Black and Defendant Harriet Black and complained about not receiving the pay increase

103.    Defendants assured Plaintiff Ford that they will look into the situation and correct the rate of pay but never did.

104.    Plaintiff Ford began complaining to the Defendants a couple of times a month, sometimes every week about the pay increase he and Plaintiff Gomez were entitled to.

105.    Defendant Bob Black and Defendants Harriet Black routinely ignored Plaintiff Ford's complaints.

106.    In or around August or September of 2020, Ann Marie commenced her employment at Defendant Audrey Signs Inc. as Office Manager.

107.    During her first few weeks at Defendant Audrey Signs Inc., she asked all of the employees if there was anything she could do to help them.

108.    Plaintiff Ford complained to Ann Marie about Defendants' repeated failure to pay the prevailing wage increase and over time.

109.     Plaintiff Ford explained to Ann Marie that Defendant Bob Black and Defendant
Harriet Black intentionally refused to pay Plaintiff Ford and Plaintiff Gomez the correct
hourly rate to no avail.

110.     Ann Marie took no remedial action disregarded Plaintiff Ford's Complaints.

111.     Defendants falsely claimed they could not change the pay rate because they had
not been paid yet by NYCHA.

112.     On or around March 8, 2021, Dimitri (last name currently unknown) ("Dimitri")
commenced his employment at Defendant Audrey Signs as a Specialist.

113.     As a Specialist, he had a similar job description as Plaintiff Ford and Plaintiff
Gomez.

114.     Plaintiffs were asked to train him on the NYCHA project.

115.     After Plaintiffs finished training Dimitri, they went to meet with a client for sign
measurements.

116.     During this meeting, Ann Marie called Plaintiff Ford and asked him to return his
tools to the office per Defendant Bob Black's request to do inventory.

117.     Ann Marie instructed both Plaintiffs to report to the offices of Defendant Audrey
Signs immediately.

118.      Upon their return, Defendant Bob Black and Ann Marie terminated both Plaintiff
Ford and Plaintiff Gomez.

119.     Plaintiffs were terminated in retaliation for their complaints about unpaid wages.

**FIRST CAUSE OF ACTION**
**(FLSA – Unpaid Overtime)**

120.     Plaintiffs, on behalf of themselves and the Class and Collective Action Members, repeat and re-allege each and every allegation of the preceding paragraphs as though they were fully set forth herein.

121.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. § 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

122.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

123.     Defendants' failure to pay overtime caused Plaintiffs and the Class and Collective Action Members to suffer loss of wages and interest thereon.  Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**(NYLL – Unpaid Overtime)**

124.     Plaintiffs, on behalf of themselves and the Class and Collective Action Members, repeat and reallege the preceding paragraphs as though they were fully set forth herein.

125.     Defendants willfully violated the Plaintiffs rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and the regulations promulgated thereunder.

126.     Defendants' failure to pay overtime premium compensation caused the Plaintiffs to suffer loss of wages and interest thereon.  The Plaintiffs are entitled to recover from the Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 666(3) *et seq*.

### THIRD CAUSE OF ACTION
**(NYLL – Failure to Provide Wage Notice)**

127.     Plaintiffs, on behalf of themselves and the Class and Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

128.     Defendants have willfully failed to supply the Plaintiffs and Class Members with a wage notice as required by NYLL, Article 6, § 195(1), at the time of hiring or annually, containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission other; the regular pay day designated by the employer; the name of the employer; the physical address of the employer and the telephone number of the employer.

129.     Due to the Defendants' violations of the NYLL, the Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars for each workday that the violations occurred or continue to occur, up to a maximum of $5,000.00 per employee, as provided for by NYLL, Article 6 §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### FOURTH CAUSE OF ACTION

**(NYLL – Failure to Provide Wage Statements)**

130.      Plaintiffs, on behalf of themselves and the Class and Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

131.      Defendants have willfully failed to provide the Plaintiffs and the Class and Collective Action Members with proper wage statements as required by NYLL Article 6 § 195 (3) with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employer; address and phone number of employer' rate or rates of pay and basis thereof; whether paid by the hsour, shift, day, week, salary or other; gross wages; deductions; and net wages.

132.      Due to the Defendants' violations of the NYLL, the Plaintiffs and the Class and Collective Action Members are entitled to recover from Defendants two hundred fifty dollars for each workday that the violations occurred or continue to occur, up to a maximum of $5,000.00 per employee, as provided for by NYLL, Article 6 §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### FIFTH CAUSE OF ACTION
**(Fraudulent Filing of Information Returns Under 26 U.S.C. § 7434(a))**

133.      Plaintiffs, on behalf of themselves and the Class and Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

134.      By failing to provide Plaintiffs and the Class and Collective Action Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants, and failing to properly record, account for, and report to the IRS all monies

paid to Plaintiffs and the Class and Collective Action Members as compensation for all of

the work performed during the course of employment with the Defendants, and failing to

properly report employee income and withhold amounts listed on W-2 forms as monies

withheld, Defendants filed fraudulent information returns with the IRS, in violation of 26

U.S.C. §7434.

135.    Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent

information return with respect to payments purported to be made to any other person,

such person may bring a civil action for damages against the person so filing such

return." 26 U.S.C. § 7434(a).

## SIXTH CAUSE OF ACTION
### (NYLL – Unpaid Prevailing Wages)

136.    Plaintiffs, on behalf of themselves and the Class and Collective Action Members,

repeat and reallege the preceding paragraphs as though they were fully set forth herein.

137.    NYLL § 220 requires that laborers on public works contracts in New York be

paid not less than the prevailing wages in their locality for their trade or occupation.

138.    Plaintiffs performed work that mandates that prevailing wages be paid.

139.    Defendants willfully violated the Plaintiffs rights by failing to pay prevailing

wages, in violation of the NYLL and the regulations promulgated thereunder.

140.    Defendants' failure to pay prevailing wages caused the Plaintiffs to suffer loss of

wages and interest thereon.  The Plaintiffs are entitled to recover from the Defendants

their unpaid prevailing wages, pursuant to the NYLL.

## SEVENTH CAUSE OF ACTION
### (NYLL- Retaliation)

141.    Plaintiffs, on behalf of themselves and the Class and Collective Action Members, repeat, reallege, and restate each and every paragraph above as if said paragraphs were more fully set forth herein at length.

142.    Plaintiffs are employees within the meaning of NYLL §215.

143.    Defendants are employers within the meaning of NYLL §215.

144.    While employed by Defendants, Plaintiffs verbally complained to Defendants about Defendants' practice, policy and procedure of not paying overtime and proper prevailing wages.

145.    Plaintiffs' verbal complaints to Defendants constitute protected activity under the NYLL.

146.    Upon complaining to Defendants about their unlawful employment practices, Defendants retaliated against the Plaintiffs by terminating their employment.

147.    A causal connection exists between the Plaintiffs' complaints to Defendants and Defendants decisions to terminate their employment.

148.    Defendants violated NYLL §215 by retaliating against the Plaintiffs for complaining to Defendants about their unlawful employment practices, policies, and procedures that violates that NYLL.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves, the Class and Collective Action Members,  and all others similarly situated, respectfully requests that this Court grant the following relief:

A.  Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b)

to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

B.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

C.  An order tolling the statute of limitations;

D.  A declaratory judgment that the practices complained of herein are unlawful under applicable federal and state law;

E.  An injunction against Defendants' and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

F.  An award of compensatory damages as a result of Defendants' failure to pay overtime compensation and prevailing wages pursuant to the FLSA, NYLL and supporting regulations;

G.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to the FLSA and NYLL;

H.  A maximum of $5,000 per Plaintiffs and each of the Class Members to failure to provide a proper wage notice upon hire or annually;

I.  A maximum of $5,000 per Plaintiffs and each of the Class Members for the failure to provide proper wage statements pursuant to the NYLL;

J.  An award of damages to Plaintiffs in an amount to be determined at trial, , to compensate Plaintiffs for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, and other benefits of employment;

K.  An award of prejudgment and post-judgment interest;

L.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees;

M.  Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Dated: November 9, 2021
          New York, New York

                                        Respectfully submitted,

                                        **Akin Law Group PLLC**

                                        */s/ Kayla S. Callahan*
                                        _____
                                        Kayla S. Callahan
                                        45 Broadway, Suite 1420
                                        New York, NY 10006
                                        (212) 825-1400

                                        *Counsel for Plaintiffs, FLSA Collective*
                                        *Plaintiffs and the Class*